ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **SERVICIOS LEGALES DE PUERTO RICO**<br>PATRONO(S)- PETICIONARIA(S)<br><br><br>V.<br><br><br>**UNIÓN DE ABOGADOS Y ABOGADAS DE SERVICIOS LEGALES DE PUERTO RICO (UAASL)**<br>UNIÓN- RECURRIDA(S) | **KLCE202500495** | ***CERTIORARI***<br>procedente del Tribunal de Primera Instancia, Sala Superior de **SAN JUAN**<br><br>Caso Núm.<br>**SJ2024CV10641 (802)**<br><br>Sobre:<br>Impugnación o Confirmación de Laudo |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos.

*Barresi Ramos*, juez ponente.

### S E N T E N C I A

En San Juan, Puerto Rico, hoy día 30 de abril de 2026.

Comparece ante este Tribunal de Apelaciones, **SERVICIOS LEGALES DE PUERTO RICO, INC. (SLPR)** mediante *Apelación* encausada el 21 de abril de 2025. En su recurso, nos solicita que revisemos la *Sentencia* prescrita el 6 de febrero de 2025 por el Tribunal de Primera Instancia (TPI), Sala Superior de San Juan.[1] Mediante el referido fallo, se modificó parcialmente el *Laudo de Arbitraje Laboral* A-25-406 formulado el 17 de octubre de 2017 a los efectos de otorgar el porciento mínimo establecido en ley para casos de despido injustificado y, como resultado, le impuso a **SLPR** el pago del 15% en honorarios legales de las cuotas pagadas al licenciado **JOEL VÁZQUEZ GUZMÁN** (licenciado **VÁZQUEZ GUZMÁN**).

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

---

[1] Dicho dictamen judicial fue notificado y archivado en autos el 6 de febrero de 2025. Apéndice de la *Apelación*, págs. 246-259.

- I -

Entre **SLPR** y la **Unión de Abogados y Abogadas de Servicios Legales de Puerto Rico** (**Unión**) existió un *Convenio Colectivo*, que rigió las relaciones obrero-patronales entre las partes, el cual estuvo vigente desde abril de 2015 hasta el 30 de junio de 2018.[2] El licenciado **Joel Vázquez Guzmán** (licenciado **Vázquez Guzmán**) era un abogado empleado de la **SLPR** asignado al Centro de Servicios Directos en el pueblo de Ponce.

El día 2 de abril de 2018, **SLPR** formuló cargos e impartió medidas disciplinarias contra el licenciado **Vázquez Guzmán**. **SLPR** alegó que el licenciado **Vázquez Guzmán** mostró un comportamiento y actitud hostil durante una reunión de trabajo. **SLPR** expresó que el licenciado **Vázquez Guzmán** abandonó el servicio y su empleo por permanecer ausente de su trabajo sin autorización de su supervisor inmediato y sin justificación alguna. Como medida disciplinaria, **SLPR** destituyó por abandono de empleo al licenciado **Vázquez Guzmán**.

El licenciado **Vázquez Guzmán**, por conducto de la **Unión**, inició el proceso de quejas y agravios implantado en el Convenio y requirió la designación de un árbitro para atender la controversia. El 21 de noviembre de 2019, se celebró la audiencia de arbitraje.

El 4 de junio de 2021, el árbitro **Ángel Tanco Galíndez** (árbitro **Tanco Galíndez**), del *Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos* (*Negociado*), decidió los *Laudos de Arbitraje* A-21-755 y A-18-1375.[3] El árbitro **Tanco Galíndez** dispuso que no procedía la desestimación, y la destitución del licenciado **Vázquez Guzmán** no estuvo justificada. Así, revocó la destitución y ordenó a **SLPR** la restitución inmediata del licenciado **Vázquez Guzmán** al puesto que ocupaba a la fecha de su remoción. Requirió a **SLPR** el pago de todos y cada uno de los haberes, beneficios, emolumentos o salarios dejados de percibir a los que hubiere

---

[2] Apéndice de la *Apelación*, págs. 61-164
[3] *Íd.*, págs. 22-60.

tenido derecho y era acreedor y debió devengar. Por último, enfatizó expresamente que retenía jurisdicción en cuanto al cumplimiento del remedio ordenado.

El 7 de julio de 2021, **SLPR** interpuso una *Solicitud de Revisión* ante el foro primario. Más tarde, el 29 de septiembre de 2022, mediante *Sentencia* se confirmó el laudo.[4] En estas circunstancias, el 2 de noviembre de 2022, **SLPR** entabló una *Apelación* ante el Tribunal de Apelaciones.[5] El 23 de enero de 2023, se decretó *Resolución* denegando la expedición del auto de *certiorari*.[6] **SLPR** acudió ante el Tribunal Supremo y el 5 de mayo de 2023, se dictaminó *Resolución* declarando no ha lugar la *Solicitud de certiorari*.[7]

El 7 de julio de 2023, la **UNIÓN** presentó una *Moción Informativa y Solicitud de Honorarios de Abogados* ante el Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos.[8] Imploró al árbitro **TANCO GALÍNDEZ** que se le impusiera al patrono el pago de 25% por concepto de honorarios de abogado a base de la totalidad de los salarios que le correspondían al licenciado **VÁZQUEZ GUZMÁN**.

Después, el 12 de julio de 2023, **SLPR** presentó su *Solicitud de Desglose y en Oposición a Solicitud de Honorarios Legales, por Falta de Jurisdicción*.[9] **SLPR** replicó que el árbitro **TANCO GALÍNDEZ** carecía de jurisdicción o autoridad para considerar el petitorio de honorarios. Expuso que bajo la doctrina de *functus officio*, la jurisdicción del árbitro **TANCO GALÍNDEZ** expiró por haberse cumplido su encomienda y cesó su facultad para ordenar la celebración de nuevas vistas, enmendar, interpretar en alguna manera el laudo emitido, o pasar juicio nuevamente sobre la cuestión. Por otra parte, **SLPR** argumentó que el Convenio no reconocía el pago de honorarios legales y el árbitro **TANCO GALÍNDEZ** estaba impedido de enmendar el arbitraje.

---

[4] Apéndice de la *Apelación*, págs. 165-177.
[5] Le fue asignado el alfanumérico KLAN202200871.
[6] Apéndice de la *Apelación*, págs. 178-187.
[7] *Íd.*, pág. 188.
[8] Apéndice de la *Apelación*, págs. 189-191. En julio de 2023, los salarios del periodo comprendido entre el 1 de abril de 2018 hasta el 19 de octubre de 2022, que totalizaron la suma de $210,519.06, fue pagada por **SLPR** al licenciado **VÁZQUEZ GUZMÁN**
[9] Apéndice de la *Apelación*, págs. 192-194.

Oportunamente, el 21 de julio de 2023, la **UNIÓN** presentó *Réplica a Oposición a "Solicitud de Desglose y en Oposición a Solicitud de Honorarios Legales por Falta de Jurisdicción" presentada por el Patrono Querellado*.[10] La **UNIÓN** señaló que del *Laudo de Arbitraje* surgía explícitamente que el árbitro **TANCO GALÍNDEZ** retuvo jurisdicción en cuanto al cumplimiento del remedio. La **UNIÓN** añadió que la concesión de honorarios en casos ventilados ante el Negociado no era una controversia novel.

A la postre, el 4 de agosto de 2023, **SLPR** presentó una *Dúplica a Réplica del 21 de julio del 2023 sobre Solicitud de Honorarios Legales, por Falta de Jurisdicción*.[11] Reiteró la falta de jurisdicción del Negociado para atender el asunto sobre honorarios y el árbitro **TANCO GALÍNDEZ** no podía enmendar el Convenio a los efectos de autorizar el pago de honorarios.

Ante este cuadro, el 17 de octubre de 2024, el árbitro **TANCO GALÍNDEZ** pronunció un segundo *Laudo de Arbitraje* en el cual concedió la petitoria de ordenar el pago de 25% de honorarios legales o de abogados de las sumas conferidas al licenciado **VÁZQUEZ GUZMÁN** mediante los Laudos A-21-755 y A-18-1375 fechados el 4 de junio de 2021.[12] El árbitro **TANCO GALÍNDEZ** infirió que la apreciación de **SLPR** sobre la aplicación de la doctrina *functus officio* era incorrecta. El árbitro **TANCO GALÍNDEZ** explicó que retuvo jurisdicción sobre el caso para asegurarse de que las partes fuesen consistentes en el cumplimiento del remedio. En cuanto al planteamiento sobre como el Convenio no reconocía el pago de honorarios legales de **SLPR**, el árbitro **TANCO GALÍNDEZ** razonó:

> La política pública que inspira la legislación sobre honorarios de abogados y de las decisiones del Tribunal Supremo al efecto de equiparar un laudo arbitral a una adjudicación judicial, nos lleva a concluir que, de ordinario, procede la imposición de honorarios de abogados en casos -repetimos- en que el obrero tiene que acudir al foro sustitutivo del judicial a hacer valer sus derechos.[13]

---

[10] Apéndice de la *Apelación*, págs. 195-199.
[11] *Íd.*, págs. 200-203.
[12] *Íd.*, págs. 204-227.
[13] *Íd.*, pág. 225.

En desacuerdo, el 17 de noviembre de 2024, **SLPR** incoó su *Solicitud de Revisión y Anulación de Laudo de Arbitraje Laboral, Emitido Sin Jurisdicción, que Concede a la Unión de Abogados el 25% de la Suma Concedida al Empleado por Concepto de Honorarios Legales*.[14] **SLPR** reafirmó sus argumentos sobre la falta de jurisdicción del árbitro TANCO GALÍNDEZ y la ausencia de cláusula sobre honorarios de abogados en el Convenio.

El 19 de diciembre de 2024, la UNIÓN presentó *Alegato en Oposición*.[15] Arguyó que el árbitro TANCO GALÍNDEZ no abrió los méritos del caso por lo que, no enmendó o trastocó la determinación del primer *Laudo de Arbitraje*. Si no que revisó y suplementó el remedio asentido para complementar el *Laudo*. La UNIÓN resaltó que la doctrina de *functus officio* distingue entre la aclaración, que está permitida, y la reconsideración, que no lo está.

Posteriormente, el 6 de febrero de 2025, se decidió la *Sentencia recurrida*.[16] Sustentó que el árbitro TANCO GALÍNDEZ no actuó de manera contraria a la doctrina de *functus officio*. Esto es, que el árbitro TANCO GALÍNDEZ no reabrió los méritos de la controversia, sino que otorgó un remedio provisto por la ley ante un despido injustificado. Halló que la solicitud de honorarios de la UNIÓN no fue conforme a los criterios instaurados en la jurisprudencia interpretativa. Entiéndase, no se presentó un desglose de las horas trabajadas. Por ello, redujo el pago al 15% por concepto de honorarios de abogado o legales.

Disconforme, el 21 de febrero de 2025, **SLPR** presentó *Solicitud de Reconsideración*.[17] Poco después, el 17 de marzo de 2025, la UNIÓN presentó *Réplica Escrito en Cumplimiento de Orden*.[18] En dicho escrito, entre otras cosas, rogó que se reconsiderara la determinación del porciento de honorarios.

---

[14] Apéndice de la *Apelación*, págs. 1-20.
[15] *Íd.*, págs. 229-245.
[16] *Íd.*, págs. 246-259.
[17] Apéndice de la *Apelación,* págs. 260-272.
[18] *Íd.*, págs. 273-281.

Así las cosas, el 18 de marzo de 2025, concretó *Orden* declarando no ha lugar a la *Solicitud de Reconsideración* presentada por **SLPR;** y no ha lugar a la *Réplica Escrito en Cumplimiento de Orden* presentada por la **UNIÓN**.

Aún inconforme, el 21 de abril de 2025, **SLPR** recurrió ante este foro revisor intermedio mediante *Apelación* señalando el(los) siguiente(s) error(es):

> Erró el TPI al no aplicar a estos hechos, la *Doctrina Legal de Functus Officio*, que privaba de jurisdicción al árbitro para conceder honorarios legales sobre un laudo de arbitraje que ya era final y firme y concluir erróneamente que el laudo original estaba "incompleto".

El 12 de mayo de 2025, la **UNIÓN** presentó su *Alegato en Oposición*.

Evaluado concienzudamente el expediente del caso, y contando con el beneficio de la comparecencia de ambas partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

- II –

- A – *CERTIORARI*

El auto de *certiorari* es un vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda revisar discrecionalmente las órdenes o resoluciones interlocutorias decretadas por una corte de inferior instancia judicial.[19] Por ello, la determinación de expedir o denegar este tipo de recurso se encuentra enmarcada dentro de la discreción judicial.[20]

De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[21] Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho".[22]

---

[19] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021).
[20] *Íd.*
[21] *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016).
[22] *Íd.*

Ahora bien, en los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de las de Procedimiento Civil de 2009.[23] La aludida Regla dispone que solo se expedirá un recurso de *certiorari* cuando, "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo".[24] La Regla 52.1 de las de Procedimiento Civil de 2009 instaura que los recursos de *certiorari* deben tramitarse de conformidad con la ley aplicable.[25] En ese sentido, y a manera de excepción, se podrá expedir este auto discrecional cuando:

(1) se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales;
(2) en asuntos relacionados a privilegios evidenciarios;
(3) en casos de anotaciones de rebeldía;
(4) en casos de relaciones de familia;
(5) en casos revestidos de interés público; o
(6) en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia.[26]

Lo anterior constituye tan solo la primera parte de nuestro análisis sobre la procedencia de un recurso de *certiorari* para revisar un dictamen del Tribunal de Primera Instancia. De modo que, aun cuando un asunto esté comprendido entre las materias que las Reglas de Procedimiento Civil de 2009 nos autorizan a revisar, el ejercicio prudente de esta facultad nos requiere tomar en consideración, además, los criterios dispuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones.[27]

Por otro lado, el examen de los [recursos] discrecionales no se da en el vacío o en ausencia de otros parámetros.[28] Para ello, la Regla 40 de nuestro Reglamento instituye los indicadores a considerar al evaluar si se debe o no expedir un recurso de *certiorari*. A saber:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho;

---

[23] 32 LPRA Ap. V, R. 52.1; *Torres González v. Zaragoza Meléndez, supra*.
[24] *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021).
[25] 32 LPRA Ap. V., R. 52.1.
[26] 32 LPRA Ap. V, R. 52.1; *Torres González v. Zaragoza Meléndez, supra*; *McNeil Healthcare v. Mun. Las Piedras I, supra*, pág. 404; *800 Ponce de León v. AIG*, 205 DPR 163 (2020).
[27] *McNeil Healthcare v. Mun. Las Piedras I, supra*, pág. 404; *800 Ponce de León v. AIG, supra*.
[28] *Íd.*

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema;

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia;

(D) Si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados;

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración;

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio; y

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[29]

Es preciso aclarar, que la anterior no constituye una lista exhaustiva, y ninguno de estos criterios es determinante, por sí solo, para justificar el ejercicio de nuestra jurisdicción.[30] En otras palabras, los anteriores criterios nos sirven de guía para poder determinar de la forma más sabia y prudente si se justifica nuestra intervención en la etapa del procedimiento en que se encuentra el caso.[31] Ello, pues distinto al recurso de apelación, este Tribunal posee discreción para expedir el auto de *certiorari*.[32] La delimitación que imponen estas disposiciones reglamentarias tiene "como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación."[33]

Finalmente, este Tribunal solo intervendrá con las determinaciones interlocutorias discrecionales procesales del tribunal sentenciador cuando este último haya incurrido en un craso abuso de discreción.[34] Esto es, "que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial".[35]

---

[29] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In Re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 141, pág. 63, 216 DPR ____ (2025); *Torres González v. Zaragoza Meléndez, supra*; *Rivera Figueroa v. Joe´s European Shop*, 183 DPR 580 (2011).

[30] *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005).

[31] *Mun. Caguas v. JRO Construction, Inc.*, 201 DPR 703, 712 (2019).

[32] *Feliberty v. Soc. de Gananciales*, 147 DPR 834, 837 (1999).

[33] *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486– 487 (2019); *Mun. Caguas v. JRO Construction Inc., supra*.

[34] *García v. Asociación*, 165 DPR 311, 322 (2005).

[35] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

## - B - *REVISIÓN DE LAUDOS DE ARBITRAJE*

En múltiples ocasiones, se ha destacado el interés del Estado en promover métodos alternos de adjudicación como la *mediación* y el *arbitraje*.[36] Por ello, en Puerto Rico existe una vigorosa política pública a favor del *arbitraje* como método alterno para la solución de disputas y toda duda sobre si procede o no el *arbitraje* debe resolverse a favor de este conforme ha sido pactado.[37] En nuestra jurisdicción existen dos (2) tipos principales de *arbitraje*: arbitraje comercial y el arbitraje industrial u obrero-patronal.[38]

El *convenio colectivo* es consistente con el principio de la libertad de contratación, pues una vez las partes prestan su consentimiento, éste se convierte en la ley entre las partes.[39] En los convenios colectivos, como regla general, las partes crean voluntariamente un sistema de quejas y agravios. Mediante dicho sistema de quejas y agravios, se precisa el contenido y alcance de las disposiciones contractuales.[40] Así, pueden pactar que sus reclamos se canalicen mediante un proceso de *arbitraje*. En tales casos, tanto las uniones como los patronos sustituyen a los tribunales por los árbitros.[41]

Al respecto, nuestro Alto Foro ha reconocido que el *arbitraje* constituye un medio más apropiado que los tribunales para la resolución de controversias, por ser más flexible, y menos técnico y oneroso.[42] Por tanto, el *arbitraje* es un procedimiento de poderes delegados y mediante el convenio colectivo se le confiere la autoridad al árbitro para que evalúe y resuelva las controversias que allí se especifican.[43]

En Puerto Rico, rige la norma de que los laudos arbitrales gozan ante los tribunales de justicia de una especial deferencia.[44] **Esta auto-restricción**

---

[36] *Constructora Estelar v. Aut. Edif. Púb.*, 183 DPR 1, 30 (2011).
[37] *Íd.*
[38] *Íd.*
[39] D. Fernández y C. Romany, *Derecho Laboral*, Tomo II, República Dominicana, Ed. Universidad de Puerto Rico, 1987, pág. 1030; *Ceferino Pérez v. Autoridad de Fuentes Fluviales*, 87 DPR 118, 122 (1963).
[40] D. Fernández, *op. cit.*, pág. 973.
[41] *Ceferino Pérez v. Autoridad de Fuentes Fluviales, supra*, pág. 130.
[42] *AAA v. UIA*, 200 DPR 903, 922 (2018).
[43] A. Acevedo Colom, *Legislación Protectora del Trabajo Comentada*, 8va ed. Rev., Puerto Rico, Ed. Ramallo Printing Bros., 2005, pág. 393.
[44] *Condado Plaza v. Asoc. Emp. Casinos P.R.*, 149 DPR 347, 352 (1999); *Pagán v. Fund. Hosp. Dr. Pila*, 114 DPR 224, 232 (1983).

**judicial reconocida en nuestra jurisdicción no es absoluta. En aquellos casos en los cuales el convenio colectivo disponga que el laudo debe ser conforme a derecho, cualquier parte afectada puede impugnarlo en el foro judicial, teniendo los tribunales la facultad para revisar su corrección y validez jurídica.**[45]

Cuando el procedimiento de *arbitraje* es **conforme a derecho, ello significa que el árbitro no puede ignorar o dejar pasar por desapercibidas las normas interpretativas, en el campo laboral, de derecho sustantivo emitidas por el Tribunal Supremo de Estados Unidos, y el de Puerto Rico.**[46] Asimismo, **las decisiones de los tribunales de primera instancia, de las agencias administrativas y los laudos arbitrales se reputarán persuasivas**.[47] Como resultado, el Tribunal no debe inclinarse fácilmente a decretar la nulidad del laudo, a menos que el mismo no haya sido resuelto conforme a derecho. Es pertinente subrayar que una discrepancia de criterio con el laudo no justifica la intervención judicial, dado que destruye los propósitos fundamentales del *arbitraje* que es resolver las controversias rápidamente, sin los costos y demoras del proceso judicial.[48]

La parte que pretende la revocación o anulación de un laudo por alguna de las instancias permitidas deberá exponer las razones que den lugar a su requerimiento y aducir la prueba necesaria que sostenga su causa de acción. El que el laudo se haga conforme a derecho no implica que los tribunales vayan a invalidarlo por el mero hecho de que exista una discrepancia de criterio. **Para invalidar el laudo, resulta necesario que surja de forma evidente que el mismo no se resolvió conforme a derecho.**[49]

---

[45] (Énfasis nuestro). A. Acevedo Colom, *op. cit.*, pág. 395; *U.G.T. v. Corp. Difusión Púb.*, 168 DPR 674, 682-683 (2006); *U.I.L. de Ponce v. Dest. Serrallés, Inc.*, 116 DPR 348, 352-353 (1985); *Ceferino Pérez v. Autoridad de Fuentes Fluviales, supra*, pág. 130.
[46] *J.R.T. v. Hato Rey Psychiatric Hospital*, 119 DPR 62, 68 (1987). (Énfasis nuestro).
[47] *Íd.* (Énfasis nuestro).
[48] *U.C.P.R. v. Triangle Engineering Corp.*, 136 DPR 133, 143 (1994).
[49] *Rivera v. Samaritano & Corp.*, 108 DPR 604, 609 (1979).

Carente de una disposición a los efectos de que el laudo de *arbitraje* sea conforme a derecho, los tribunales no deben revisar alegados errores en la apreciación de la prueba o en la aplicación de las normas de derecho, a pesar del sentir concurrente o disidente que puedan albergar. En estos laudos, las determinaciones de un árbitro, en cuanto a los hechos y en cuanto a derecho, son finales y no revisables por los tribunales, aunque haya mediado error por parte de éstos en la apreciación de los hechos y el derecho aplicable, y aun cuando el tribunal hubiese llegado a una conclusión distinta.[50]

De modo que, si en el convenio de sumisión las partes acordaron que el laudo sería emitido con arreglo a derecho, **el tribunal tiene la facultad para revisar los méritos jurídicos del laudo. En esos casos, la revisión judicial es análoga a la de las decisiones administrativas.**[51] Consecuentemente, las determinaciones de hechos en los laudos de *arbitraje* conforme a derecho pueden ser revisadas cuando no están sostenidas por evidencia sustancial en el expediente. Claro está, aún en estos casos, los tribunales de instancia no deben inclinarse a decretar la nulidad del fallo a menos que efectivamente el mismo no haya resuelto la controversia conforme a derecho.[52]

### - C - *Doctrina Functus Officio*

Es un principio general del derecho común de *arbitraje* que una vez el árbitro emite su determinación está impedido de pasar nuevamente sobre ella.[53] Esta norma se le conoce como la doctrina de *functus officio* y la misma forma parte de nuestro ordenamiento jurídico.[54] Esta doctrina se fundamenta en el hecho de que la fuente de autoridad y jurisdicción del árbitro para atender la controversia proviene del acuerdo suscrito entre las partes. De

---

[50] *Febus y otros v. MARPE Const. Corp.*, 135 DPR 206, 217-218 (1994).
[51] *Constructora Estelar v. Aut. Edif. Púb.*, *supra*, págs. 33 (Énfasis nuestro).
[52] *Íd.*, págs. 26, 33-34.
[53] Elkouri & Elkouri, *How Arbitration Works*, 6th ed., Washington D.C., ABA 2010, pág. 325.
[54] *J.R.T. v. A.E.E.*, 112 DPR 169 (1982).

manera que, su jurisdicción concluye en el momento que este emite el laudo.[55]

Aun así, la doctrina de *functus officio* no impide que el árbitro revise un laudo si es para corregir errores que surgen de su faz, perfeccionar un laudo incompleto o para aclarar alguna ambigüedad.[56] Bajo la primera excepción, se le permite al árbitro corregir un laudo en el que cuando se trata de errores mecanográficos, secretariales o aritméticos.[57] La segunda excepción, le permite al árbitro atender un asunto que se encuentra ante su consideración, pero no se adjudicó completamente o el remedio no quedó especificado.[58] La tercera excepción, aplica en aquellos casos donde un laudo, que parecería estar completado, resulta ser ambiguo y necesita clarificación.[59] Sin bien es cierto que la doctrina de *functus officio* reconoce que la *jurisdicción* del árbitro concluye en el momento que este emite el laudo, también reconoce que existen ocasiones en las que el árbitro puede volver sobre el laudo sin reabrir la controversia en los méritos.

### - D – *HONORARIOS*

En Puesto Rico, tanto la jurisprudencia como la legislación vigente procuran una política pública protectora de aquellos trabajadores que instan una reclamación laboral en contra de su patrono. Tanto es así, que la Ley Núm. 402 de 12 de mayo de 1950, según enmendada, enuncia:[60]

> [P]ermitir el cobro de honorarios de abogado a los trabajadores o empleados que se ven en la necesidad de reclamar contra sus patronos, al amparo de la legislación laboral federal o local o convenio de trabajo de naturaleza individual o colectivo, equivale a permitir que se reduzca el valor de su trabajo en la cantidad que paguen a sus abogados.[61]

De ese modo, la Ley Núm. 402 principia que los casos radicados ante las cortes de Puerto Rico por un trabajador en que se reclame **cualquier**

---

[55] *Íd.*, pág. 171; Demetrio Fernández Quiñones, *El Arbitraje Obrero Patronal,* Colombia, Forum 2000, págs. 54-55.
[56] *Elkouri & Elkouri, op. cit., pág. 328.*
[57] *Elkouri & Elkouri, op. cit., pág. 328-329.*
[58] *Elkouri & Elkouri, op. cit., pág. 329.*
[59] *Íd.*
[60] (Ley Núm. 402)
[61] 32 LPRA § 3114.

**derecho o suma de dinero contra su patrono**, al amparo de la legislación laboral federal o local o **convenio de trabajo de naturaleza individual o colectivo** y en que se conceda el ruego en todo o en parte, se condenará al patrono al pago de honorarios de abogado, **si este no fuere uno de los abogados del Departamento de Trabajo y Recursos Humanos**.[62]Incluso, la Ley Núm. 402 previene que serán nulos los contratos, convenios o acuerdos en que los trabajadores se obliguen directa o indirectamente a pagar honorarios a sus abogados en casos de reclamaciones judiciales contra su patrono bajo la legislación laboral de Puerto Rico o al amparo de un convenio colectivo.[63]

- III –

En su único señalamiento de error, **SLPR** apuntala que el foro primario erró al no aplicar la doctrina de *functus officio* que privaba de jurisdicción al árbitro para conceder honorarios legales sobre un laudo de arbitraje que era final y firme, así como concluir que el laudo original estaba incompleto. **SLPR** colige que el árbitro Tanco Galíndez revisó el primer laudo datado el 4 de junio de 2021 ante una súplica de honorarios de abogados de la Unión y su intervención no cumple con ninguna de las excepciones bajo la doctrina de *functus officio*. **SLPR** pondera que la Unión no tiene derecho a cobrar honorarios de abogados porque el Convenio habido entre las partes nada disponía sobre ello. Refuta, que el árbitro Tanco Galíndez enmendó el Convenio al conceder los honorarios legales.

Por su parte, la Unión, en representación del licenciado Vázquez Guzmán, acota que, en el segundo laudo, el árbitro Tanco Galíndez no abrió la controversia sobre el despido; no actuó fuera de los límites o poderes reconocidos; ni enmendó los remedios concedidos. Sólo concertó el pago de honorarios de abogado lo cual es un derecho innegable de todo obrero que resulte vencedor en una causa de acción contra su patrono.

---

[62] 32 LPRA § 3115. Énfasis suplido.
[63] 32 LPRA § 3116.

En este caso, el Convenio habido entre **SLPR** y la **Unión** proveía un procedimiento para la resolución de quejas y agravios en su Artículo 7.[64] En el Convenio se disponía que en aquellos casos donde las partes no alcanzaran un acuerdo, el empleado querellante podría someter el caso ante un árbitro del Negociado.[65] De igual forma, emana del Convenio que las decisiones del árbitro debían ser *conforme a la ley y a derecho.*[66]

Como es sabido, el 4 de junio de 2021, el árbitro **Tanco Galíndez** en el <u>primer</u> laudo comprobó que la destitución del licenciado **Vázquez Guzmán** fue injustificado; este debía ser reinstalado en su puesto y solventó el pago de los salarios dejados de percibir. Luego de que **SLPR** agotara todos todas las etapas apelativas disponibles, el 7 de julio de 2023, la **Unión** presentó su *Moción Informativa y Solicitud de Honorarios de Abogados* ante el Negociado. Interpeló un derecho del obrero provisto por las leyes laborales: la imposición de honorarios de abogados.

El árbitro **Tanco Galíndez** propuso un <u>segundo</u> laudo en el cual concedió los honorarios de abogados y cimentó su determinación en que retuvo jurisdicción sobre el caso para asegurarse de que las partes fueran consistentes en el cumplimiento de los laudos. Aparte, la legislación laboral prescribe la concesión de honorarios de abogados a los obreros que prevalezcan en una causa de acción contra su patrono. La *Sentencia* de 6 de febrero de 2025 confirmó las acciones del árbitro **Tanco Galíndez**, aunque redujo el porcentaje de los honorarios de abogados.

En el caso ante nuestra consideración, ciertamente, el árbitro **Tanco Galíndez** actuó conforme a la ley sin entrar en los méritos del <u>primer</u> laudo. Discurrimos que el foro apelado no incidió al confirmar la determinación del árbitro **Tanco Galíndez**. Ante el hecho de que se resolvió conforme a derecho conceder los honorarios de abogados y la ausencia de prejuicio,

---

[64] Apéndice de la *Apelación*, págs. 74-87.
[65] Apéndice de la *Apelación*, pág. 76.
[66] Apéndice de la *Apelación*, pág. 77.

parcialidad o error manifiesto, procedemos a confirmar la determinación judicial apelada.

**- IV -**

Por los fundamentos antes expuestos, ***expedimos*** el auto de *Certiorari* incoado el 21 de abril de 2025 por **SLPR**; y, en consecuencia, confirmamos la *Sentencia* provista el 6 de febrero de 2025 por el Tribunal de Primera Instancia, Sala Superior de San Juan.

**Notifíquese inmediatamente**.

Lo acordó el Tribunal y certifica la Secretaría del Tribunal de Apelaciones.

La Jueza Cintrón Cintrón concurre con el resultado sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones